IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PAUL EZRA RHOADES, ) | |
| ) | Case No. CV 93-0155-S-EJL |
| Petitioner, ) | (Bingham County) |
| ) | |
| v. ) | **CAPITAL CASE** |
| ) | |
| A.J. ARAVE, Warden, ) | **MEMORANDUM DECISION** |
| ) | **AND ORDER** |
| Respondent. ) | |
| _____ ) | |

Before the Court in this capital habeas matter is briefing on whether an evidentiary hearing should be held with respect to Petitioner's claims of ineffective assistance of counsel. The Court has determined that this matter will be resolved on the record without oral argument. D. Idaho L. Civ. R. 7.4(d); 9.2(h)(5).

For the reasons that follow, the Court will reserve its decision whether an evidentiary hearing will be required as to counsel's alleged failure to present certain mitigating evidence at the sentencing hearing (Claim 23(xiii)). The Court concludes that an evidentiary hearing will not be held on any other claims.

I.

BACKGROUND

Petitioner has been convicted of murder, and other felonies, for the shooting deaths of Stacy Baldwin in Bingham County, and Susan Michelbacher and Nolan Haddon in Bonneville County. This case arises from the judgment in the Baldwin matter, for which Petitioner has been sentenced to death.

**Memorandum Decision and Order - 1**

Attorney David Parmenter, the Bingham County Public Defender, was appointed to represent Petitioner during the trial, post-conviction, and through the consolidated appeal in the Idaho Supreme Court. Petitioner contends that Parmenter's representation was constitutionally deficient in numerous respects. (Docket No. 252, pp. 30-35.) This Court had previously dismissed Petitioner's claims of ineffective assistance of counsel as procedurally barred (except claims involving counsel's representation on appeal), but has since reconsidered that decision in accordance with the Ninth Circuit's decision in *Hoffman v. Arave*, 236 F.3d 523 (9th Cir. 2001). The Court has allowed the parties to submit supplemental briefing to separate triable issues of ineffective assistance from issues that can be decided as a matter of law. The matter is now ripe for a decision.[1]

## II.

## LEGAL STANDARDS

Because Petitioner initiated this case before the enactment of the Antiterrorism and Effective Death Penalty Act, the Act's restrictions on evidentiary development in federal court are not applicable. *Lindh v. Murphy*, 521 U.S. 320, 336-37 (1997).

An evidentiary hearing is mandatory in a federal habeas case when the following two conditions have been satisfied: (1) the petitioner has presented a "colorable" claim on the merits, meaning he has alleged specific facts that, if proven to be true, would entitle him to habeas relief, and (2) the state court trier of fact has not reliably found the relevant facts after a full and fair hearing. *Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005); *Hendricks v. Vasquez*, 974 F.2d

---

[1] The Court recently denied Petitioner's request to stay this case pending the completion of DNA litigation in state court. (Docket No. 311.) The Court indicated that it would consider revisiting the issue if Petitioner could show significant development in the state court DNA litigation, but he has not done so.

**Memorandum Decision and Order - 2**

1099, 1103 (9th Cir. 1992); *Townsend v. Sain*, 372 U.S. 293 (1963). The corollary to this rule is that no federal hearing is required when the claim can be resolved as a matter of law, or when the facts are contained within the existing record. *Hendricks*, 974 F.2d at 1103; *Pizzuto v. Arave*, 280 F.3d 949, 973 (9th Cir. 2002). Conclusory or speculative allegations also do not require a hearing. *See Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994). However, even when an evidentiary hearing is not mandatory, the court retains the discretion to hold one. *Seidel v. Merkle*, 146 F.3d 750, 753-55 (9th Cir. 1998).

Whether a petitioner has alleged a colorable claim for relief turns on the elements of the constitutional claim. To establish a colorable violation of the right to the effective assistance of counsel guaranteed by the Sixth Amendment, the petitioner must present specific facts that, if true, would show that his counsel's performance was deficient and that the defense was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 684 (1984). An attorney's representation will be deemed to have been constitutionally deficient only if it fell below an objective standard of reasonableness measured under prevailing professional norms. *Id*. at 684, 694. To show prejudice, the petitioner must demonstrate that there is a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Id*. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

### III.

### DISCUSSION

Petitioner did not have an evidentiary hearing on any claims of ineffective assistance of counsel in state court because he did not raise them at the correct time under state law. While the Court has since excused Petitioner's default, this does not mean that he is automatically entitled to

a hearing in federal court. Rather, he still has a burden to allege specific facts that, if true, would show a Sixth Amendment violation.

Moreover, this habeas case has been pending for well over a decade, and in addition to whatever investigation Petitioner has been pursuing during that time, the Court has already granted him leave to develop the facts to some extent through limited discovery. In particular, early in this proceeding, the Court allowed Petitioner to depose several witnesses, including one of his lead state court counsel, David Parmenter. (Docket No. 53.) Petitioner lodged a transcript of that deposition, and the parties and the Court have since referred to Parmenter's testimony. (Docket Nos. 152, 159, 161, 167.) Because this testimony relates to many of the claims currently under consideration and will assist the Court in determining whether a hearing will be required, the Court will expand the record to include the Parmenter deposition transcript. *See* Rule 7 of the Rules Governing Section 2254 Cases.

Against this backdrop, the Court will now review Petitioner's twenty-eight specific allegations of ineffective assistance of counsel.[2] (Docket No. 252, pp. 30-35.)

1.  Handling of the Insanity Issue

Petitioner first contends that his counsel"perpetrat[ed] a fraud upon the state courts by pursuing an insanity issue knowing there was no factual basis for the defense." (Docket No. 252, p. 30.) The Court previously determined that to the extent this claim related to counsel's choice of

---

[2] The Court previously concluded that a hearing will not be required on Petitioner's claims of ineffective assistance of appellate counsel, and it will revisit that matter only as necessary. (Docket No. 167.) In addition, the Court declines Respondent's invitation to reconsider the default status of Petitioner's appellate counsel claims.

**Memorandum Decision and Order - 4**

issues to raise on appeal, it presented a question of law based upon the record. (Docket No. 167, p. 19.) To the extent the claim relates to trial matters, the Court now concludes that it is not colorable.

When Petitioner was charged with these crimes, Idaho had recently abolished the insanity defense, but Petitioner's attorneys in both his Bonneville and Bingham County cases wished to explore Petitioner's mental condition and possibly challenge the repeal of the insanity defense on constitutional grounds. To that end, Petitioner was examined by a psychiatrist, Dr. Kenneth Ash, who had been retained by his attorneys in the Bonneville County case. Trial counsel in this case also consulted with Dr. Ash. (Parmenter Depo., p. 83.) Though counsel has since testified that after he received the expert's opinion he did not believe that the facts supported an insanity defense, he also claimed that he intended to challenge the change in the law. (Parmenter Depo., pp. 82, 85-86.) There is nothing objectively unreasonable about an attorney investigating his client's mental condition before trial, and then attempting to preserve a challenge to a recently amended law. Petitioner has failed to allege any facts to the contrary.

Petitioner appears to contend that counsel's single-minded focus on the insanity issue prevented him from developing other evidence of Petitioner's mental state that would establish a lack of specific intent to commit the crimes charged. Petitioner does not support this assertion with any facts, aside from generalities about his drug use at the time and a psychologist's statement that "there is concern [Petitioner] may have been intoxicated with methamphetamine at or around the time the crimes were reported to have occurred." (Docket No. 308, Appendix 3, p. 5.) Regardless, it is clear that counsel made a tactical decision to defend the case by attempting to create reasonable doubt whether Petitioner committed the crimes. *See Strickland*, 466 U.S. at 690 (noting that strategic decisions made after a reasonable investigation are "virtually unchallengeable"). Petitioner

**Memorandum Decision and Order - 5**

has not explained how this decision was objectively unreasonable, much less alleged facts that would show that a defense based upon the inability to form the necessary mental state may have resulted in a different verdict. Accordingly, there is no need for a hearing on this claim.

    2.    <u>Failure to Call Critical Eyewitnesses to the Baldwin Abduction</u>

In his next claim, Petitioner alleges that counsel was deficient in failing to call eyewitnesses to the Baldwin abduction whose description of the supposed kidnapper did not match Petitioner. This claim can also be resolved on the existing record.

The essential facts include the following. Three teenage girls were approaching the Mini Barn convenience store, where Stacy Baldwin worked, around the time of her disappearance. The girls saw a man hurriedly leave the store, get into a pickup, and drive away recklessly with someone sitting very near to him. Two of the three girls were able to provide an initial description of this man to police. Carrie Baier described him as being around 5' 9" tall and as possibly having short gray hair. Loretta Wallace described the man as being of average height, stocky build, and in his late thirties or early forties. These descriptions did not match Petitioner, and the girls never identified him as the man who fled the Mini Barn, but they would later match the suspect vehicle to the pickup that Petitioner routinely drove.

Petitioner now contends that his counsel was ineffective in failing to present the girls' initial descriptions of the man they saw leaving the Mini Barn, and other witnesses' descriptions of individuals who were in the store before Baldwin's abduction, and then contrasting the obvious differences with Petitioner's physical characteristics.[3]

---

[3] Petitioner also complains that his counsel should have presented an expert witness to testify about the inherent problems with eyewitness identification. Setting aside questions regarding the propriety of expanding or amending the initial claim through supplemental

**Memorandum Decision and Order - 6**

The record clearly shows that trial counsel did not ignore this issue, as Petitioner's seems to suggest. Rather, during his cross-examination of Detective Paul Newbold, counsel elicited testimony that the suspect was initially considered to be of average height, average build, between the ages of thirty five to forty, with short, grayish hair and no facial hair. (Tr., Vol. IV, pp. 919-930.) He also cross-examined Carrie Baier regarding the issue, and though she claimed not to remember certain parts of her initial description, she admitted that she had said that the man had short hair and was of average height. (Tr., Vol. V, pp. 1139-39.) As part of his closing argument, counsel emphasized how the description did not match Petitioner. He further argued that Carrie Baier, who knew Petitioner, did not identify him. (Tr. Vol. IX, pp. 2424-25.) As a result, while counsel did not present the second girl's testimony, the information that Petitioner contends she would have offered was already in evidence through Newbold and Baier.

Petitioner's subsidiary allegation, that trial counsel was deficient in failing to call additional witnesses, is lacking in specificity and relies primarily upon snippets of hearsay information in police reports. In any case, the probative value of this evidence would have been minimal. None of these potential witnesses were present when the robbery and abduction occurred. Susan Farish's sighting, which may have been the closest in time, would not have been particularly helpful, as she vaguely described a "white male American wearing a brown work coat [and] a baseball cap." (Docket No. 294, Exhibit 7.) Undoubtedly, many customers passed through the Mini Barn that night, and there is nothing objectively unreasonable about defense counsel's decision not to present a succession of witnesses who could describe bits and pieces of yet another person who may have been present at a busy convenience store.

---

briefing, counsel did, in fact, present such a witness. (Tr., Vol. VIII, pp. 2174-2230.)

**Memorandum Decision and Order - 7**

Based upon the foregoing, Petitioner has failed to allege a colorable allegation of unreasonable performance. Moreover, because the jury heard evidence that the description of the suspect differed significantly from Petitioner's appearance, additional evidence in that regard would have been cumulative. Petitioner is likewise unable to demonstrate that there is a reasonable probability of a different outcome based upon any alleged deficiency in counsel's handling of the eyewitness testimony.

    3.    <u>Failure to Preserve Attorney/Client Privilege and Attorney Work Product</u>

Petitioner alleges that Parmenter sent status reports to the trial court to support his requests for investigative funds, revealing work product and attorney/client information in the process. This claim is conclusory. Even if counsel's public disclosure of strategic matters was deficient in some respect, Petitioner has not alleged how he was prejudiced.

    4.    <u>Proposing or Failing to Object to Constitutionally Defective Jury Instructions – Claim 23(iv & v)</u>

This claim will likely rise or fall depending upon the merits of Claim 3, which presents a direct challenge to the same instructions. This issue involves a question of law.

    5.    <u>Failure to Challenge the Aggravating Factors, Argue that the Sentences Were Imposed Under the Influence of Passion or Prejudice, or Argue that the Penalty for Kidnapping was Disproportionate</u>

Counsel's responses to the State's aggravating factors, his argument or lack thereof with respect to the influence of passion or prejudice, and his handling of the sentence for kidnapping are all matters of record. As record-based claims, there is no need for an evidentiary hearing.

    6.    <u>Failure to Call Inmate Witnesses to Discredit David Holm's Testimony</u>

County jail inmate David Holm testified at Petitioner's trial that Petitioner had made several incriminating statements to him while they were cellmates. Petitioner contends that other inmates

**Memorandum Decision and Order - 8**

could have testified that Petitioner did not make any such statements to them, and that his counsel was ineffective in failing to use those witnesses.

Contrary to Petitioner's allegation, trial counsel actually attempted to present the testimony of other inmates to discredit Holm, but the trial court excluded the evidence on hearsay grounds. (Tr., Vol VIII, pp. 2060-63.) Petitioner's attorney cannot be faulted now for failing to present evidence that was excluded by the trial court.

Petitioner also cannot show prejudice. Trial counsel went to great lengths to discredit Holm's testimony, getting him to admit during cross-examination that he was a manipulator and a thief. (Tr., Vol. VI, pp. 1543-58.) Counsel presented several witnesses who testified that Holm was essentially a liar who should not be believed. He stressed the implausibility of Holm's claim that Petitioner would have confessed to him during their brief interaction, and he introduced the possibility that Holm pieced together the incriminating information from other sources. In short, testimony by other inmate witnesses claiming that Petitioner did not make any incriminating statements to them would have added little to the glaring impeachment that was already in the record.

       7.      <u>Failure to Call Witnesses at Trial to Testify that Detective Shaw Supplied Marijuana to David Holm While Holm was Incarcerated</u>

To support this claim, Petitioner appears to rely exclusively upon the testimony of the officer in charge of the jail, William English. English testified at Petitioner's sentencing hearing that jail staff had discovered marijuana in a public area. (Tr., Vol. X, p. 2499.) The marijuana was marked for identification and then replaced, and, according to English, "a detective along with Mr. Holms [sic], were the ones that actually went in and got the marijuana when they were passing through the area as part of some relationship." (Tr., Vol. X, p. 2499.)

**Memorandum Decision and Order - 9**

Despite the passage of over fifteen years, Petitioner has not identified any other potential witnesses who can corroborate Petitioner's current allegation, or, indeed, any concrete facts regarding the alleged incident beyond the reference to English's vague statement, which is based upon second-hand information. This conclusory claim does not require a hearing.

        8.      <u>Permitting a Ballistics Report to be Disclosed to the State</u>

A ballistics expert working for the State, Wally Baker, concluded that the bullet found in Stacy Baldwin's body had been fired from the handgun that was linked to Petitioner. Before trial, defense counsel consulted with Richard Fox, a criminalist in California, to review this evidence. Fox determined that while he could not exclude the possibility of a match, he would criticize the testing used by Baker, and he did not believe the evidence was sufficient to support a match. (Tr., Vol. VII, pp. 1943-1948.) But because Fox was initially unavailable to testify at trial, and the court refused to continue the trial date, Petitioner's counsel agreed to have another expert, Ned Stuart, examine the ballistics evidence. Like Baker, he concluded that the lethal bullet had been fired from the suspect weapon. Stuart apparently sent his findings to the Bingham County Sheriff's Department, which forwarded them to the prosecutor and to defense counsel.

During trial, Fox became available to testify for the defense, but the prosecutor indicated that if defense counsel called Fox, he would call Stuart on rebuttal. (Tr., Vol. VII, pp. 1943-1948.) Fox's testimony was not presented.

Petitioner contends that his counsel was ineffective in failing to prevent the disclosure of Ned Stuart's opinion to the prosecutor. He alleges that Stuart should have been working as an expert for the defense, and that Petitioner had no obligation to disclose an expert's report unless the expert was called to testify at trial. Petitioner asserts that he was prejudiced by counsel's error, as he was

**Memorandum Decision and Order - 10**

effectively prevented from giving Fox's opinion to the jury because Stuart would have then been called to reinforce Baker's conclusions.

It is unnecessary for the Court to determine whether Petitioner could prove at an evidentiary hearing that counsel's actions were professionally unreasonable, because even if they were, he cannot establish prejudice. *See Strickland*, 466 U.S. at 697 (court may dispose of claim on either prong).

First, Fox would *not* have testified that the bullet found at the crime scene failed to match the test bullets fired from the handgun that had been linked to Petitioner. At best, he would have questioned Baker's testing methods and offered an opinion that the test result was inconclusive, but he would not rule out the possibility of a match. (Tr., Vol. VII, pp. 1943-1948.) Fox may have also offered some marginally helpful evidence in other areas. (Tr., Vol. VII, p. 1947.) Fox's testimony would not have provided anything more than incremental assistance to the defense.

Next, even in the absence of the threatened rebuttal testimony by Stuart, defense counsel was uneasy about the strength of Fox's theories and how they would play with a jury. He testified during his deposition that part of the reason for seeking a second opinion was based upon some of his reservations about using Fox:

> We came to a point where it became obvious that Mr. Fox wasn't going to be as helpful as we thought. In fact, the last time I met with him I got the distinct impression that he was pretty reluctant to come up and testify. You know, certainly he could espouse his theories, but I wasn't convinced that that would carry the day.
>
> ***
>
> When it came to ballistics his – and that in my mind was the primary reason that I was attempting to use him. There were other reasons as well – but when it came to ballistics his views were a little bit out in left field and I was having difficulty seeing if I could get them accepted by a jury in this area as opposed to, you know,

**Memorandum Decision and Order - 11**

> the usual scenario where a law enforcement officers comes in and – investigative officers and claims that a bullet – or that two bullets match.

(Parmenter Depo., pp. 51, 105.)

Finally, much of the information that would have been presented through Fox's testimony was already in evidence. Relying on various treatises, Parmenter cross-examined Baker regarding the potential weaknesses in ballistics testing in general and Baker's methods in particular, including his failure to take photographs to explain to the jury how he reached his conclusion. (Tr., Vol. VII, pp. 1851-1889.)

Therefore, in light of the equivocal nature of the potential testimony, and given counsel's uncertainty about the impact of that testimony and his thorough cross-examination of Baker on similar matters, Petitioner cannot show that there is a reasonable probability that the result of the trial would have been different had Fox actually testified. This claim can be resolved as a matter of law.

9. <u>Failure to Argue that the Trial Court's Refusal to Permit Deputy Christian to Testify Violated Petitioner's Constitutional Right to Present Evidence</u>

The Court has reviewed the record and concludes that the material facts regarding the Kevin Buchholz confession, counsel's investigation into the matter, and counsel's argument relating to the admissibility of the statements, are already well developed in the record. Petitioner has not shown that an evidentiary hearing is necessary, and he may brief the issue based upon the facts in the record.

10. <u>Failure to Call Richard Fox or Another Expert Witness to Undermine the State's Ballistics, Hair, and Footprint Evidence</u>

Petitioner next alleges that his counsel was ineffective in not presenting an expert's testimony to counter the State's ballistics, hair, and footprint evidence. If Petitioner means that trial

**Memorandum Decision and Order - 12**

counsel should have called Richard Fox in spite of the potential rebuttal of his testimony by Ned Stuart, counsel clearly made a tactical decision not to do so because of the uncertain impact of Fox's testimony and the reinforcement that Stuart would bring to the State's case. (Tr., Vol. VII, pp. 1943-1948.)  If Petitioner is alleging instead that his counsel was ineffective in failing to consult with a different expert and then present his or her testimony to the jury, Petitioner has failed to show that such an expert was available to testify about these matters, what the additional evidence would have been, and how it could have created a reasonable probability of a different outcome.

The Court recognizes that Petitioner has attached to his reply brief an affidavit from a forensic scientist, Dr. Greg Hampikian, which contains his opinion with respect to the FBI's serological testing in the Bonneville County capital case, but Dr. Hampikian has nothing to say about the "ballistics, hair examination and footprint evidence" in this case.  (Docket No. 308, Appendices 1 & 2.) Further, beyond asserting that the ballistics evidence linked all three homicides, Petitioner has not articulated precisely how an expert's conclusion that the FBI's test results allegedly excluding Petitioner as a contributor of the semen in the Bonneville County capital case–forensic evidence that was not presented in this case–would have assisted his defense in the Baldwin matter.  Indeed, it seems unlikely that Petitioner would have wanted to open up the facts of the Michelbacher homicide for full inspection during the Baldwin trial.  But more to the point, Petitioner has simply not alleged how his counsel's failure to obtain an opinion similar to Dr. Hampikian's, assuming one existed, was unreasonable or prejudiced him in *this* case.  Petitioner has not carried his burden to show that a hearing is mandatory.

      11.    <u>Failure to Call Medical Examiner Donald Reay</u>

Petitioner alleges that Dr. Reay could have testified that the autopsy procedure was

"inadequate" and would have disputed evidence that the victim may have been alive up to ninety minutes after she was shot. This is a conclusory allegation, as Petitioner has not offered even a rough approximation of the substance of the omitted testimony. Petitioner has also not indicated the basis on which Dr. Reay would have relied in refuting that the victim lived for a period of time after she was shot, or how such evidence may have created a different outcome at the guilt or penalty phases.

> 12. <u>Failure to Investigate, Develop, and Present Mental State Issues at Trial and at Sentencing</u>

In its previous order addressing Petitioner's request for an evidentiary hearing, the Court denied a hearing on this claim as it related to sentencing and appeal. The Court concluded that Petitioner had not specified what the mitigating evidence was that his attorney had allegedly missed. (Docket No. 167, p. 18.) This holds equally true with respect to "mental state issues" at trial, which remain largely unexplained.

With a single exception, Petitioner still has not provided any information regarding the nature of the mental health evidence that his attorney allegedly failed to uncover and present at the sentencing hearing. That exception is purportedly contained in a report completed by Dr. Craig Beaver, who examined Petitioner several years after he was sentenced in this case. Dr. Beaver does not claim that Petitioner has a mental disease or defect, and he has very little to offer about the effect of drug use on Petitioner's mental state. (Docket No. 308, Appendix 3, pp. 4-5.) Much of the other information contained in the report was already before the sentencing judge. Nevertheless, before determining whether this claim can be resolved as a matter of law or whether a hearing will be necessary, the Court will allow Petitioner to explicate in final briefing why Dr. Beaver's report supports a colorable claim of ineffective assistance of counsel at the penalty phase.

**Memorandum Decision and Order - 14**

13.     Presenting a Deficient Sentencing Memorandum

In its earlier Order, the Court found that counsel presented mitigating evidence to the sentencing court and made an argument for life. (Docket No. 167, p. 17.) The manner in which a case is argued generally falls within the realm of trial tactics. *Cf. Cone v. Bell*, 535 U.S. 685, 701-02 (2005). In addition, most of the material in the sentencing memorandum was background information that was before the court from other sources. The Court concludes that this claim does not require a hearing.

14.     Failure to Establish a Discovery Procedure

Petitioner alleges that counsel's organization with respect to the discovery that he had received from the State was deficient. This claim is devoid of specific facts supporting either prong of the *Strickland* test.

15.     Failure to Fully Investigate Kevin Buchholz Confession

As noted, the facts and circumstances surrounding the Buchholz statements, and counsel's investigation into those statements, are already matters of record.

16.     Failure to Present Live Witnesses at the Suppression Hearing

Petitioner has not alleged how counsel's tactical decision to rely upon the record in the Bonneville County case with respect to the similar suppression issue raised in this case was unreasonable or, more specifically, how the presentation of live witnesses may have led to a different outcome.

17.     Failure to Appeal the Trial Court's Exclusion of Deputy Christian's Testimony

The Court previously denied an evidentiary hearing on this claim, and denied Petitioner's

**Memorandum Decision and Order - 15**

request to reconsider that decision. (Docket Nos. 167, pp. 19-20; Docket No. 213, pp. 7-8.) The Court adheres to those decisions.

      18.     <u>Failure to Appeal the Constitutionality of Jury Instructions</u>

The Court also previously determined that this claim presented a legal issue based upon the record, and it reaffirms that decision. (Docket No. 167, p. 19.)

      19.     <u>Failure to Argue the Factual Insufficiency of the Aggravating Circumstances or the Constitutionality of Those Circumstances</u>

Whether the aggravating circumstances are supported by the evidence, and counsel's performance relating to contesting the aggravating circumstances, are record-based claims that can be resolved as a matter of law. No hearing is required.

      20.     <u>Failure to Withdraw Following Sentencing</u>

Petitioner contends that his counsel's failure to withdraw prevented him from raising claims of ineffective assistance of counsel. Petitioner is being permitted to raise his claims now, so he cannot show prejudice.

      21.     <u>Failure to Require the Idaho Supreme Court to Comply with Its Statutory Automatic Review</u>

The Court reaffirms its earlier decision that this claim presents a record-based claim. (Docket No. 167, p. 19.)

      22.     <u>Failure to Raise, Develop, Brief, or Argue the Unconstitutionality of the Death Penalty for Kidnapping and the Aggravating Circumstances Defined and Found in Support</u>

This claim is related to Claims 15 and 16 in the Third Amended Petition, and its merit will likely depend upon the resolution of those claims. If Petitioner can show that the death penalty for kidnapping is unconstitutional or that the aggravating circumstances are unconstitutional, then

**Memorandum Decision and Order - 16**

counsel would likely have been ineffective in failing to raise those issues. There is no need for a hearing to develop facts in support of this claim.

23.  Failure to Argue Residual Doubt at Sentencing

During his argument at the sentencing hearing, Petitioner's counsel chose to focus on the mitigating evidence that he had presented rather than to relitigate guilt and innocence, which is clearly a tactical decision, but he did briefly touch on residual doubt and the extent of Petitioner's role in the offenses. (Tr., Vol. X, p. 2568-76.) Regardless, Petitioner has not alleged facts that would demonstrate that a different residual doubt argument to the sentencing court would have created a reasonable probability of a different outcome.

24.  Failure to Raise on Appeal that the Facts Supporting Aggravating Circumstances had been Double Counted

The Court adheres to its previous decision that this issue can be resolved on the existing record.

25.  Failure to Argue Evidentiary Rulings on Appeal

This Court determined in its earlier Order that this claim is conclusory and does not require a hearing. (Docket No. 167, p. 18.)

26.  Failure to Object or Raise on Appeal that the Sentencing Court Improperly Weighed All Mitigating Circumstances Against All Aggravating Circumstances

This claim is based upon the facts in the record and the application of law to the record. There is no need for a hearing.

27.  Failure to Be Present at the Presentence Investigation Interview

The Court of Appeals for the Ninth Circuit has held that a presentence interview by a state official is a critical stage of the proceeding for which a defendant has a right to counsel. *Hoffman*

**Memorandum Decision and Order - 17**

*v. Arave*, 236 F.3d 523, 538-39 (9th Cir. 2001). Petitioner, however, has not alleged how his counsel's absence at the presentence interview or his failure to object to the consideration of Petitioner's statements at sentencing affected the outcome. At this time, the Court concludes that no hearing will be held.

      28.     <u>Cumulative Errors</u>

The Court has already found this allegation to be conclusory. (Docket No. 167, p. 18.) To the extent that it is not conclusory, the allegation does not require a hearing independently of the other claims of ineffective assistance.

### IV.

### CONCLUSION

The Court will reserve its ruling whether an evidentiary hearing is necessary for Claim 23(xiii) as it relates to counsel's representation at sentencing. For all other claims, the Court concludes that Petitioner has failed to show that an evidentiary hearing is mandatory, and the Court declines to exercise its discretion and hold one.

Before this case was delayed, the parties had filed memoranda addressing the merits of most of the claims raised in this case. (Docket Nos. 124 & 130.) Given the extensive passage of time, the parties shall be permitted to file supplemental briefing on the merits of non-dismissed claims. Such briefing, however, shall truly be supplemental and shall not rehash old arguments.

Because of the age of this case and the briefing already in the record, the Court intends to hold the parties to firm deadlines and will not grant extensions of time absent truly exceptional circumstances. The filing of any intervening motions will not suspend these deadlines. After the completion of supplemental briefing, the Court will schedule oral argument, if necessary.

**V.**

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that the record in this case shall be expanded to include the deposition transcript of David Parmenter, lodged with the Court on March 17, 1997.

IT IS FURTHER ORDERED that Petitioner's request for an evidentiary hearing on all of his claims of ineffective assistance of counsel is denied. The Court reserves its final decision, however, whether an evidentiary hearing will be required on the limited allegation contained in Claim 23(xiii), as discussed in this Memorandum Decision.

IT IS FURTHER ORDERED that within 35 days of the date of this Order, Petitioner shall file a supplemental brief on the merits of any non-dismissed habeas claims. Within 35 days of receiving Petitioner's brief, Respondent shall file a supplemental brief on the merits. No reply brief shall be filed.

DATED: **May 18, 2006**

Honorable Edward J. Lodge
U. S. District Judge

**Memorandum Decision and Order - 19**